**NO. 24-1836**

In The

# United States Court of Appeals

## For The First Circuit

### UNITED STATES,

*Plaintiff/Appellee,*

v.

## OSVALDO CALDERIN-PASCUAL, a/k/a Cubano a/k/a Calde,

*Defendant,*

## DAVID CALDERIN-PASCUAL,

*Third-Party Petitioner/Appellant.*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT COURT OF PUERTO RICO**

_____

**BRIEF OF APPELLANT**

_____

**GEORGE T. PALLAS, P.A**
**1st Circuit Bar No: 1213445**
**2420 SW 22nd Street**
**Miami, FL 33145**
**305-856-8580**
**305-860-4828 FAX**
**george@pallaslaw.com**
**By:/s/** *George T. Pallas*
**GEORGE T. PALLAS, P.A**
  *Counsel for Appellant*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES............................................................ i

STATEMENT OF SUBJECT MATTER
    AND APPELLATE JURISDICTION. ....................................... 1

STATEMENT OF THE CASE AND FACTS..................................... 2

STATEMENT OF ISSUE. ................................................................ 7

SUMMARY OF ARGUMENT. .......................................................... 8

ARGUMENT........................................................................................ 9

POINT I: THE APPELLANT'S PRO SE PETITION FOR ANCILLARY
    RELIEF, PURSUANT TO 21 U.S.C. § 853(n), WHICH
    WAS PROPERLY SWORN TO AND HAD
    SUFFICIENT SUPPORTING
    DOCUMENTATION AS TO OWNERSHIP AND
    ACQUISITION, WAS NOT SO INCURABLY
    DEFECTIVE AS TO OBLIGATE THE
    DISTRICT COURT TO DISMISS THE CLAIM
    AND DENY APPELLANT A HEARING WHICH
    HE HAD SOUGHT FOR YEARS, WHERE THE
    COURT COULD HAVE SIMPLY AFFORDED
    APPELLANT AN OPPORTUNITY TO AMEND
    AND, IN FACT, THE GOVERNMENT HAD
    OFFERED THAT ALTERNATIVE AS A
    REMEDY………………………………………….8

CONCLUSION.................................................................................. 17

CERTIFICATE OF COMPLIANCE WITH
    TYPEFACE AND LENGTH LIMITS
    PURSUANT TO FRAP 32(A)(7)(c). ...................................... 18

CERTIFICATE OF SERVICE. .......................................................... 19

TABLE OF AUTHORITIES

*Willis Mgmt* (Vt.) *Ltd. v. United Sates,* 652 F.3d 236, 241 (2d Cir. 2011).....9

*Bell Atl. Corp. v. Twombly,* 550 U.S.544……………………………………9

*Erickson v. Pardus,* 551 U.S. …………………………………………...10

*Libretti v. United States, 516 U.S. 29* (1995)………………………………10

*United States v. Valentin-Acevedo*, 625 F.Appx. 16 (1st Cir. 2015)...............12

*United States v. Catala 870 F.3d 6* (1st Cir. 2017)…………………………13

*United States v. Padilla Galarza,* 351 F.3d…………………………...15

*United States v. Furando,* 40 F.4th 567 (7th Cir, 2022)……………………..16

*Vidal v. Elster,* 602 U.S. 286, 144 S. Ct. 1507 (2024)……………………...11

**CONSTITUTIONAL AMENDMENTS AND
FEDERAL STATUTES**

21 U.S.C. § 853(n)……………………………………………………………9

U.S. Const. amend. 14………………………………………………………...10

8 U.S.C. § 3231 .................................................................................... ….1

**OTHER AUTHORITIES**

Rule 12(b) of Federal Rules of Civil Procedure…………………………..9

Rule 33.2, Federal Rules of Criminal Procedure……………………10,14

## <u>STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION</u>

1. The basis for subject matter jurisdiction in the District Court was 21 U.S.C. §853(n).

2. The basis for jurisdiction in the Court of Appeals is 28 U.S.C. §1291.

3. The District Court entered A Final Order of Forfeiture on August 15, 2024, (App 147) and Appellant filed a Notice of Appeal on August 28, 2024, (App 139) making this appeal timely.

4. This appeal is from a final order or judgment that disposes of all of the parties' claims.

## STATEMENT OF THE CASE AND FACTS

On September 23, 2021, an Indictment was returned in the District of Puerto Rico charging four individuals, Ramon Antonio Vega-Ortiz (1), Osvaldo Calderin-Pascual (2), Luis Almonte-Cruz (3) and Reinaldo Feliciano-Troche (4) with various drug importation and money laundering offenses. (App. 1).  The Appellant, **DAVID CALDERIN-PASCUAL,** is the brother of one of the criminal defendants, Osvaldo Calderin-Pascual. (App. 139).  **DAVID CALDERIN-PASCUAL** is a licensed commercial fisherman. (App. 155)

In addition to the criminal violations alleged in the Indictment, also included were forfeiture counts where the government sought forfeiture of certain enumerated items that they alleged were derived from the charged offenses and/or were used to commit or facilitate the offenses. (App. 55). The Indictment listed fourteen (14) items:  Three (3) real estate parcels, seven (7) mostly luxury vehicles, two (2) bank accounts, one (1) 24-foot center console boat and penultimately, the subject of this appeal, a 1997 Avanti, Center Console, 25-foot boat, HIN ERQ25114F697, PR Reg. No. 2213CC, the Appellant's boat.  (App. 55-7).  The boat was valued at $46,640.00 by the government. (App. 154).  The PR Reg. No. of the boat, as it appears in the

2

Indictment and, as it is referred to throughout these proceedings, is in the name of the Appellant, **DAVID CALDERIN-PASCUAL.**

On January 25, 2022, Mr. David Calderin-Pascual timely filed an administrative claim with the Department of Justice, Drug Enforcement Administration (DEA), seeking the return of his vessel. (App. 152-6). He made no claim as to any of the other items listed in the Indictment. This claim was signed by Mr. David Calderin-Pascual under the penalty of perjury and had attached to it the vessel's Boat Title and License, Boat Certification, Trailer Title, Engines quote and purchase receipt, and his commercial fishing license. (App. 152-6).

No action was ever taken by the DEA on his administrative claim. On the contrary, and unbeknownst to him, the government, just prior to the expiration of the 60-day period to respond [18 U.S. Code § 983], filed a civil forfeiture action against this vessel. *United States v. One 1997 Avanti Powerboats 25 Vessel*, No. 22-cv-1189 (ADC). This Verified Complaint in Rem was never served on the Mr. David Calderin-Pascual. It does not appear it was ever served on anyone. On the same date, the government filed a Motion to Stay alleging that discovery could adversely affect the prosecution of the related

criminal case. Three days later the case was transferred to the docket of the underlying criminal case from which this appeal emanates.

The Complaint was "verified" by an unsworn declaration which the Appellant later moved to unrestrict. (App. 272). The government opposed the motion and the trial judge, in a minute order, denied the motion. (App. 41).

Beginning in June 2023, the criminal cases against all four criminal defendants began to resolve by guilty pleas. On June 7, 2023, defendant Reinaldo Feliciano-Troche (4) pleaded guilty "straight," that is, without any plea agreement with the government. (App. 26). On July 6, 2023, defendant Luis Almonte-Cruz (3) pleaded guilty pursuant to a Plea and Forfeiture Agreement. (App. 60). On July 14, 2023, defendant Ramon Antonio Vega-Ortiz (1) pleaded guilty pursuant to a Plea and Forfeiture Agreement. (App. 79). Finally, on August 14, 2023, the last defendant, Osvaldo Calderin-Pascual (2) pleaded guilty pursuant to a Plea and Forfeiture Agreement with the government. (App. 100). In each agreement the defendants agreed to waive and forgo any interests or claims to any seized property.

On November 22, 2023, the government filed a Motion for Preliminary Order of Forfeiture against Osvaldo Calderin-Pascual (2). (App. 36). On

December 18, 2023, the government filed a Motion for Preliminary Order of Forfeiture against Ramon Antonio Vega-Ortiz (1).  (App. 36).

On February 29, 2024, the Appellant, **DAVID CALDERIN-PASCAUL**, *pro se*, hand-filed a timely "Petition for Hearing to Contest Forfeiture" in which he asserted, under oath, a legal interest in the property (the boat). (App. 126).  He sought a hearing to contest the forfeiture and correctly cited to 21 U.S.C. §853(n) and Rule 32.2(c) of the Federal Rules of Criminal Procedure.  He attached copies of what he thought established his ownership of the boat:  1) *Certificado de Propiedad*  (Title) in the name of David Calderin-Pascual, corresponding to vessel registration PR2213CC, as it is identified in the Indictment), 2) Title to the boat trailer, 3) a *Certificado de Numeracion* in the name of David Calderin-Pascual with registration number PR2213CC, and 4)  Receipts for purchase of Suzuki outboard motors.  (App. 129-133).

On April 25, 2024, the government filed a motion seeking dismissal of the petition, but, in the alternative, asking the Court to direct Mr. David Calderin-Pascual to file an amended petition.  (App. 134).  On May 21, 2024, the Appellant, now with counsel, filed a Response to the government's motion. (App.139). Attached to this motion was further documentation indicating that 1)

a Mr. Martin Bresciani purchased the vessel at an auction in 2015, and that 2), according to the Puerto Rican *Departamento de Recursos Naturales y Ambientales,* that title to this vessel was transferred from Martin Bresciani to the Appellant, David Calderin-Pascual, on May 6, 2017.  (App. 143-4).  On August 2, 2024, the trial court, without a hearing, entered an Order granting the government's motion and dismissing the Appellant's claim.  (App. 38).

On August 15, 2024, the court below entered a Final Order of Forfeiture. (App. 147-8) This Order does not name David Calderin-Pascual, only his brother, the criminal defendant, Osvaldo Calderin-Pascual.  Moreover, it states that "the petition from Ms. Perez has been denied."  (A. 148).

A timely Notice of Appeal to this Court was docketed in the lower court on August 28, 2024.  (App. 160-1).  This appeal follows.

## STATEMENT OF THE ISSUE

Whether the Appellant's *pro se* Petition for Ancillary Relief pursuant to 21 U.S.C. §853(n), which was properly sworn to and had attached to it sufficient supporting documentation of ownership and acquisition, was so incurably defective that the District Court was obligated to dismiss the claim and deny Appellant a hearing which he had been seeking for years, where the Court could have simply afforded Appellant an opportunity to amend and, in fact, the government had, alternatively, asked for that very remedy?

## SUMMARY OF ARGUMENT

The Appellant's *pro se* third-party petition, pursuant to 21 U.S.C. 853(n), was sufficient to withstand dismissal where it was properly sworn to and had supporting documents that, at least, entitled him to a hearing.   It was the only avenue available to him to seek return of his property.   Since any perceived defect was curable, an opportunity to amend was more appropriate under the circumstances. No one else made claim to it.

## ARGUMENT

### Standard of Review

A motion to dismiss a third-party petition in a criminal forfeiture proceeding is analyzed in the same way as a motion to dismiss a complaint under Rule 12(b) of the Federal Rules of Civil Procedure. See *Willis Mgmt (Vt.), Ltd. v. United States*, 652 F.3d 236, 241 (2d Cir. 2011).   Consequently, a third-party petitioner under section 853(n) must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S.544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Where, as here, the district court finds that the petition does not satisfy this standard, its order of dismissal is reviewed de novo.   *Nisselson v. Lernout*, 469 F.3d 143, 150 (1st Cir. 2006).

Furthermore, Congress has mandated that the provisions of this section "shall be liberally construed to effectuate its remedial purposes."  21 U.S.C 853(o).

The Appellant, David Calderin-Pascual, hand-filed his third-

9

party petition *pro se*.  The Supreme court has held that "a document filed *pro se* is to be liberally construed" and "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

<u>The Statutory Scheme</u>

Pursuant to 21 U.S.C 853(n), the criminal forfeiture statute, a third-party may petition for a hearing to adjudicate its interests in property subject to forfeiture in a criminal case. It's a third-party's exclusive avenue to protecting their interests. *Libretti v. United States*, 516 U.S. 29 (1995) ("[T]hird-party claimants can establish their entitlement to return of the assets ***only by means of the hearing afforded*** under 21 U.S.C. § 853(n).") (emphasis added).  If, as prescribed by this statute, a third party files such a petition asserting an interest in the property to be forfeited, the court ***must*** conduct an ancillary proceeding.  (emphasis added).  Rule 32.2, Federal Rules of Criminal Procedure.

The 14th Amendment's Due Process Clause guarantees

10

that no state can deprive a person of "life, liberty, or property, without due process of law," meaning that if the government seizes someone's property, they must follow established legal procedures to do so, including providing notice and an opportunity to be heard before taking the property.   The Appellant, David Calderin-Pascual, has been trying for three years to retrieve his 1997 25-foot boat, valued then at about $40,000, that was seized in his brother's criminal case.  He first sought return of his boat in January 25, 202, by timely filing an administrative claim, with supporting documentation, with the seizing agency, DEA.  He was ignored.  Then an unserved am unnoticed, intervening civil action by the government, likely filed simply to avert the time limits of that claim, further delayed the return of his boat.  *United States v. One 1997 Avanti Powerboats 25 Vessel*, No. 22-cv-1189 (ADC).  He then was required to wait another two (2) years until every criminal defendant pleaded guilty and renounced any ownership interest in it.  In February 29, 2024 he hand-filed his *pro se* "Petition for Hearing to Contest Forfeiture."  (A.126).  The government

moved to dismiss, but recognizing that this third-party petitioner was *pro se*, alternatively requested that he simply be afforded another chance at submitting his petition. (A.134).

The First Circuit case law

In *United States v. Valentin-Acevedo*, 625 Fed Appx 16 (1st Cir. 2015) this Court affirmed the dismissal of a wife's petition, but only after the district court permitted three months of discovery, to develop a factual record, and motions for summary judgment.    There, a wife attempted to claim an interest in real property that her criminal defendant ex-husband held title to in solely his name and her sole ground for asserting an interest was an amended deed conveying an interest to her through marriage. Once it was determined that she acquired this property well after her ex-husband's conspiracy began, and therefore, after the government's interest in the property vested, this Court affirmed the dismissal.

The *Valentin-Acevedo* differs markedly from the case *sub judice.* First, the petitioner below, David Calderin-Pascual, was never afforded even the most basic discovery to achieve a fair resolution of his claim. On the contrary, his petition was dismissed without explanation,

12

even when the government sought, as an alternative, allowing him to amend. (App. ). .  Secondly, and more fundamentally, his petition, its attachments and the attachments to his response to the government's motion to dismiss, clearly indicate acquisition of the boat and trailer well before the commencement of the conspiracy.  This documentation shows that 1) a Mr. Martin Bresciani purchased the vessel at an auction in 2015, and that 2), according to the Puerto Rican *Departamento de Recursos Naturales y Ambientales,* that title to this vessel was transferred from Martin Bresciani to the Appellant, David Calderin-Pascual, on May 6, 2017. (App. 143-4).  Moreover, title to the trailer (App.130) also indicates dates years prior to the start of the conspiracy, May 2019, as alleged in the Indictment (App. 43), and as contained in his brother's Plea and Forfeiture Agreement (App. 100).

In *United States v. Catala*, 870 F.3d 6 (1ˢᵗ Cir. 2017), a defendant pleaded guilty to drug charges and the district court determined that the $14,792 in cash that was seized represented the proceeds of the defendant's illegal drug dealings  An individual creditor filed a third-party petition, in which he asserted a claim to

the seized cash under 21 U.S.C. § 853(n) and Federal Rule of Criminal Procedure 32.2(c). The government moved to dismiss his claim under Rule 32.2(c)(1)(A), which authorizes dismissal of a third-party petition for, among other things, lack of standing or failure to state a claim. The district court granted the government's motion, ruling that the creditor had no legal right to the forfeited proceeds.  There, this Court held, that the government's interest in the forfeited cash vested as soon as the defendant began selling drugs and before any proceeds started to reach him.  Thus, to the extent that the appellant had any interest in the defendant's illgotten gains, that interest could not possibly have predated the defendant's acquisition of the funds and, thus, could not have predated the government's interest.

Here again, the third-party petitioner, David Calderin-Pascual's acquisition of the boat predated any claimed vesting of interest by the government.  His brother, Osvaldo Calderin-Pascual, pleaded guilty and renounced any interest in the boat. Because of the brother's guilty plea and denial of ownership, "the forfeiture was primarily a matter between the government and the current named

14

owner of the [property]." United *States v. Padilla-Galarza*, 351 F.3d 594, 600 (1ˢᵗ Cir. 2003).

<u>Reversal of the District Court is the Appropriate Remedy</u>

The 14th Amendment's Due Process Clause guarantees that a person cannot be deprived of "life, liberty, or property, without due process of law," meaning that if the government seizes someone's property, they must follow established legal procedures to do so, including providing notice and an opportunity to be heard before taking the property.    The Appellant, David Calderin-Pascual, has been trying for three years to retrieve his 1997 25-foot boat, valued then at about $40,000, that was seized in his brother's criminal case.  He has never been permitted to argue his case.  He first sought return of his boat on January 25, 202, by timely filing an administrative claim, with supporting documentation, with the seizing agency, DEA.  He was ignored.  Then an unserved and unnoticed, intervening civil action by the government, likely filed simply to avert the time limits of that claim, further delayed the return of his boat.  *United States v. One 1997 Avanti Powerboats 25*

15

*Vessel*, No. 22-cv-1189 (ADC).  He then was required to wait another two (2) years until every criminal defendant pleaded guilty and renounced any ownership interest in it.   In February 29, 2024, he hand-filed his *pro se* "Petition for Hearing to Contest Forfeiture."   (A.126).   The government moved to dismiss, but recognizing that this third-party petitioner was *pro se*, alternatively requested that he simply be afforded another chance at submitting his petition.  (A.134).

His *pro se* petition and supporting documents were sufficient to trigger a hearing.  Assuming *arguendo* it was not, dismissal of his petition without a hearing or opportunity to amend was not appropriate, as any jurisdictional deficiency may have been curable through amendment. *United States v. Furando*, 40 F.4th 567 (7th Cir,2022)

Hence, reversal is required.

<u>CONCLUSION</u>

The Final Order of Forfeiture should be reversed and this Court should order this case to be remanded to the District Court to conduct an evidentiary hearing on the Appellant's third-party petition in accordance with 21 U.S.C. 853(n).

Respectfully submitted,

GEORGE T. PALLAS, P.A
1st Circuit Bar No: 1213445
2420 SW 22nd Street
Miami, FL 33145
305-856-8580
305-860-4828 FAX
george@pallaslaw.com

By:/s/ *George T. Pallas*
GEORGE T. PALLAS, Esq.

*Counsel for Appellant*

**<u>CERTIFICATE OF SERVICE</u>**

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been electronically filed with the Clerk of Court using CM/ECF system which will send notification of such filing to all parties.

UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

UNITED STATES OF AMERICA,

        *Appellee,*

     *v.*

DAVID

CALDERIN

PASCUAL,

 *Third Party Petitioner-Appellant.*

## CERTIFICATE OF COMPLIANCE WITH TYPEFACE AND LENGTH LIMITS PURSUANT TO FRAP 32(A)(7)(c)

     I hereby certify that, pursuant to Rule 32 of the Federal Rules

of Appellate Procedure, this brief does not exceed 13,000 words.

Rather, it contains 3,011 words.

                   *s/ George T. Pallas*
                   George T. Pallas

UNITED STATES COURT OF
APPEALS FOR THE FIRST CIRCUIT

UNITED STATES OF AMERICA,

        *Appellee,*

          *v*

  . DAVID

  CALDE

  RIN-

  PASCUA

  L,

      *Defendant-Appellant.*

      I hereby certify that on January 17, 2025, I electronically

filed the foregoing with the United States Court of Appeals for

the First Circuit by using the CM/ECF system which will send

notification to all counsel of record.

                      */s/ George T. Pallas*
                      George T. Pallas

# ADDENDUM

## **Table of Contents**

Final Order of Forfeiture
　　Filed August 15, 2024 [DE257]…………………………………………………..1

Petition for Hearing to Contest Forfeiture (pro se)
　　Filed February 29, 2024 [DE223]…………………………………………...3

Response to Government's Motion to Dismiss
　　Filed May 21, 2024 [DE244]…………………………………………………11

18 U.S.C. 853…………………………………………………………………………..19

21

# UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA
Plaintiff

v.

[2] OSVALDO CALDERIN-PASCUAL,
Defendant,

CRIMINAL NO.: 21-350 (ADC)

## FINAL ORDER OF FORFEITURE

WHEREAS, on December 19, 2023, the Court entered a Preliminary Order of Forfeiture against defendant [2] Osvaldo Calderin-Pascual forfeiting all rights, titles, and interest in one (1) Avanti, Center Counsel, 25-foot boat, HIN: ERQ25114F697, PR Reg. No. 2213CC with outboard engines and one boat trailer; and

WHEREAS, the Drug Enforcement Administration (DEA) and United States Marshall Service (USMS) seized and has custody of the properties, and

WHEREAS, the United States duly published notice of the Preliminary Order of Forfeiture, and has also provided direct notice of the Order to all known interested parties, and returns with respect to the publication and service of notice have been filed with the Court; and

WHEREAS, the time for filing petitions for said properties has expired, and the petition from Ms. Perez has been denied; and

WHEREAS, pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, the Preliminary Ordre of Forfeiture is final as to defendant [2] Osvaldo Calderin-Pascual who had an interest in the properties subject to forfeiture;

*Criminal No.: 21-350 (ADC)*

It is hereby ORDERED pursuant to 21 U.S.C. § 853 (n)(7) and Rule 32.2 of the Federal Rules of Criminal Procedure that:

The Preliminary Order of Forfeiture issued on December 19, 2023, as to one (1) Avanti, Center Counsel, 25-foot boat, HIN: ERQ25114F697, PR Reg. No. 2213CC with outboard engines and one boat trailer, is final and all rights, titles, claims, and interests of any and all persons or entities in and to the properties are forfeited to the United States.

The properties forfeited herein shall be disposed of pursuant to law.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, _____ August 15 , 2024.


___*s/Aida M. Delgado-Colon*_____
HONORABLE AIDA M. DELGADO-COLON
UNITED STATES DISTRICT JUDGE

2

UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,
**Plaintiff**

Criminal No.: 21CR350 (ADC)

**v.**

RAMON ANTONIO VEGA-
ORTIZ, et. al.
**Defendant.**

## <u>**PETITION FOR HEARING TO CONTEST FORFEITURE**</u>

The Claimant/Interested Party, **DAVID CALDERIN-PASCUAL**, pursuant to 21 U.S.C. s.853(n) and Rule 32.2(c) of the Federal Rules of Criminal Procedure, petitions this Court for a hearing to contest forfeiture (ancillary relief) pursuant to this Court's Preliminary Order of Forfeiture dated December 19, 2023, and as grounds therefore, alleges:

1. I, the Claimant, **DAVID CALDERIN-PASCUAL,** am a person, other than the Defendant, who asserts a legal interest in the property which has been ordered forfeited by this Court and, as such, am petitioning the Court for a hearing to adjudicate the validity of my interest pursuant to 21 U.S.C. 853(n)(2).

2. I, the Claimant, **DAVID CALDERIN-PASCUAL,** was, at the time of the seizure, the sole and rightful owner of the vessel known as one Avanti, Center

3

Console, 25-foot boat, HIN ERQ25114F697, PR Reg. No. 2213CC with outboard engines and one boat trailer.

3. I, the Claimant, **DAVID CALDERIN-PASCUAL,** have a valid, good faith, and legally recognizable interest in this asset(s) which is superior to the government.

4. I, the Claimant, **DAVID CALDERIN-PASCUAL,** in support of interest in the asset(s), have submitted to the government the following documents: Boat Property Certificate, Boat Title and License, Trailer Title, Engines Receipt.

WHEREFORE, I the Claimant/Interested Party, **DAVID CALDERIN-PASCUAL,** requests this Court to grant this relief requested herein.

I, David Calderin-Pascual, attest and declare under penalty of perjury that my claim is not frivolous, and the information provided in support of my claim is true and correct.

By:/s _____

February 28, 2024

Respectfully submitted,

DAVID CALDERIN-PASCUAL
By:/s/ *David Calderin-Pascual*
USB Bayamon GDNS DD32 Calle C
Baymon, PR 00957-2468
787-907-2200
adlmixed@gmail.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been sent to Assistant United States Attorney, Luis Angel Valentin at the United States Attorney's Office at 350 Carlos Chardon Ave, Suite 1201 San Juan, PR 00918.

By:/s/ *David Calderin-Pascual*
DAVID CALDERIN-PASCUAL

## DECLARATION UNDER PENALTY OF PERJURY

I, **David Calderín-Pascual**, of legal age, single, contractor, and resident of

Bayamón, Puerto Rico, interested party in the referenced case, declare under penalty

of perjury that I have read the foregoing Petition for Hearing to Contest Forfeiture

and that it is true and correct to the best of my knowledge.

**THUS, I SIGN**, in Bayamón, Puerto Rico on February 28, 2024.

DAVID CALDERIN-PASCUAL

**AFFIDAVIT NUM: #** _2986_

**SWORN AND SUBSCRIBED** before me by **DAVID CALDERIN-PASCUAL**, of the personal circumstances stated above, who I have identified by his driver's license #6133788 with expiration date on March 23, 2031.



NOTARY PUBLIC
COMMISSION #18,746
MY COMMISION IS PERMANENT

# CERTIFICADO DE TITULO

## ESTADO LIBRE ASOCIADO DE PUERTO RICO
### DEPARTAMENTO DE TRANSPORTACION Y OBRAS PUBLICAS
### DIRECTORIA DE SERVICIOS AL CONDUCTOR

09jun2017  10:17:02    0552-11974-13610-00000000

| NUMERO DE TITULO | FECHA DE EXPEDICION | NUMERO DE REGISTRO | FECHA DE REGISTRO |
|---|---|---|---|
| A  11486017 | 19ene2016 | 11448822 | 19ene2016 |

| NUMERO DE SERIE (VIN) | MARCA | MODELO | AÑO | NUM. CILINDROS |
|---|---|---|---|---|
| 1M5BA2821G1E12649 | MAGIC TILT T | TRAILE | 2016 | |

| CAP. CARGA | PESO | NUEVO USADO | TITULO ANTERIOR | ESTADO | ODOMETRO | COLOR |
|---|---|---|---|---|---|---|
| 2,000 | 2,000 | NUEVO | Cert Orig | FL | | GRIS CL |

NOMBRE Y DIRECCION DEL DUEÑO REGISTRAL:
Nombre: CALDERIN PASCUAL, DAVID

Resid:
La Misma

**ESTE ES SU TITULO DE PROPIEDAD. CONSERVELO EN SITIO SEGURO.**

Postal: URB FLORAL PARK
515 CALLE CARIBE
SAN JUAN, PR 00918

GRAVAMENES

PRIMER GRAVAMEN (VENTA CONDICIONAL)

FECHA
DIA-MES-AÑO

SEGUNDO GRAVAMEN (OTROS)

CANCELACION GRAVAMEN

EL (LOS) ABAJO FIRMANTE (S) TENEDOR (ES) DEL GRAVAMEN SOBRE EL VEHICULO DE MOTOR DESCRITO ARRIBA CERTIFICAMOS QUE EL MISMO HA SIDO PAGADO (SI MAS DE UN GRAVAMEN DEBERAN APARECER DOS (2) FIRMAS)

PRIMER GRAVAMEN _____      FECHA _____      FIRMA AUTORIZADA

SEGUNDO GRAVAMEN _____      FECHA _____      FIRMA AUTORIZADA

NUMERO CONTROL
A-1 9 9534

SECRETARIO DTOP
O REPRESENTANTE AUTORIZADO

## NO ES VALIDO SI ES ALTERADO

7



**Gobierno de Puerto Rico**

**DEPARTAMENTO DE RECURSOS NATURALES Y AMBIENTALES**

**DRNA-OCN-006**

PO BOX 366147
San Juan, PR 00936
Tel. (787) 999-2200
Fax: (787) 999-2303

**OFICINA DEL COMISIONADO DE NAVEGACIÓN**

DIVISIÓN DE INSCRIPCIÓN Y NUMERACIÓN DE EMBARCACIONES

**CERTIFICADO DE PROPIEDAD**

De acuerdo a los archivos de la División de Inscripción y Numeración de Embarcaciones el número de registro PR2213CC corresponde a la siguiente descripción:

| | |
|---|---|
| **Número de Registro** | PR2213CC |
| **Nombre Embarcación** | O D |
| **Serie de Casco** | ERQ25114F697 |
| **Fecha Inscripción** | FEB-28-1997 |
| **Número de Marbete** | 22-9510 (FEB-2022) |
| **Marca del Fabricante** | AVANTI POWERBOATS |
| **Eslora** | 25.0 pies |
| **Material del Casco** | FIBRA DE VIDRIO |
| **Combustible** | GASOLINA |
| **Propulsión** | HELICE |
| **Tipo de Motor** | FUERA DE BORDA |
| **Uso** | PLACER |
| **Gravamen** | NEGATIVO |
| **Multa** | NEGATIVO |
| **Estatus** | ACTIVO |

Certificamos que la embarcación antes descrita está registrada a nombre de DAVID CALDERIN PASCUAL. La información es fiel y exacta según consta en nuestro sistema.

Esta certificación se expide a solicitud de DAVID CALDERIN PASCUAL, dada hoy 19 enero 2022, en San Juan, Puerto Rico.

Sello Oficial

DRNA-OCN
Cert. 01-19-01-2022

**Luis A. Márquez Ruiz**
**Comisionado de Navegación**

8



**Gobierno de Puerto Rico**
Departamento de Recursos Naturales y Ambientales
Oficina del Comisionado de Navegación

CERTIFICADO DE NUMERACION

SERIE CASCO                                    PR2213CC
ERQ25114F697

NOMBRE DEL DUEÑO
DAVID CALDERIN PASCUAL

DIRECCION
URB FLORAL PARK
515 CALLE CARIBE
SAN JUAN PR 00918

MARCA                          TIPO DE EMBARCACIÓN
Avanti                         CABINA ABIERTA

MARBETE                        MATERIAL DEL CASCO
21-11146                       FIBRA DE VIDRIO

ESLORA    AÑO DE CONST.        COMBUSTIBLE
25        1997                 GASOLINA

USO                            PROPULSION
Placer                         HELICE

                               TIPO DE MOTOR
NOMBRE EMBARCACION             FUERA DE BORDA
O D

FIRMA _____

9



# UNITED STATES DISTRICT COURT
# DISTRICT OF PUERTO RICO

**UNITED STATES OF AMERICA,**
**Plaintiff**

         **Criminal No.: 21CR350 (ADC)**

   **v.**

**RAMON ANTONIO VEGA-**
**ORTIZ, et. al.**
   **Defendant,**

**DAVID CALDERIN-PASCUAL**
   **Third-Party Petitioner.**

## RESPONSE TO GOVERNMENT'S MOTION TO DISMISS PETITON OR FOR AN ORDER DIRECTING THE FILING OF AN AMENDED PETITION

  The Third-Party Petitioner, **DAVID CALDERIN-PASCUAL**, through undersigned counsel, responds to the government's motion seeking dismissal of, or alternatively amendment to, his Petition for Hearing to Contest Forfeiture (ECF 223), and as grounds therefore, would show unto the Court:

  1. On February 28, 2024, the Third-Party Petitioner, **DAVID CALDERIN-PASCUAL**, filed his Petition for Hearing to Contest Forfeiture, under penalty of perjury, setting forth his right, title or interest in the subject property (a boat, trailer and engines) ordered forfeited by this Court from the criminal defendant, his brother, OSVALDO CALDERIN-PASCUAL.

2. The Petition set forth the Third- Party Petitioner's interest in the subject property as follows:

   a) The Third-Party Petitioner swore, under penalty of perjury, that he was the sole and rightful owner of the subject property,

   b) The Third-Party Petitioner attached the following government documents to the Petition demonstrating his ownership of the subject property: 1) the Property Certificate of the subject vessel showing that it is registered in his name; 2) the *Certificado de Numeracion*, also in his name and 3) the Certificate of Title for the trailer also in his name. The Third-Party Petitioner also submitted receipts for the purchase of the outboard engines.

3. The government, in its motion, claims that this is insufficient to establish that the Third-Party Petitioner is the rightful owner of the vessel and that therefore he lacks standing to contest the forfeiture.

4. Upon receipt of the government's motion, the Petitioner submitted to the government additional documentation from the *Departamento de Recursos Naturales y Ambientales* establishing that title to the vessel was transferred from a Martin Bresciani to the Third-Party Petitioner on May 6, 2017. (attached). Mr. Bresciani purchased the vessel at an auction in 2015. (attached).

5.   The Petition, including the attachments, clearly sets forth a *prima facie* case of standing, demonstrating the nature and extent of the Third-Party Petitioner's right, title or interest in the property, the time and circumstances of his acquisition of the right, title or interest in the property and further demonstrates that the Third-Party Petitioner's interest existed before the conduct giving rise to the forfeiture occurred. As such, the government's motion to dismiss should be denied and the matter should be set for an evidentiary hearing.  Alternatively, the Court should allow the Third-Party Petitioner sufficient time to amend his petition as requested by the government.

   **WHEREFORE,** based upon the foregoing, the Third-Party Petitioner, **DAVID CALDERIN-PASCUAL,** respectfully requests the Court to grant the relief requested herein.

Respectfully submitted,

GEORGE T. PALLAS, P.A
Bar No.: 348694
2420 SW 22nd Street
Miami, FL 33145
305-856-8580
305-860-4828 FAX
george@pallaslaw.com

By:/s/    *George T. Pallas*
      GEORGE T. PALLAS, ESQ.

## <u>CERTIFICATE OF SERVICE</u>

I certify that on this 20th day of May 2024, I electronically filed the foregoing with the Clerk of the Court using CM/ECF system which will send notification of such filing.

By:/s/    *George T. Pallas*
GEORGE T. PALLAS, ESQ.



| 10/28/2015 Vessels | | | |
|---|---|---|---|
| **Auction Lot** | **Description** | **Bidder** | **Winning Bid** |
| 2 | 1986 Paramount 6.4m Center Console Vessel: Length: 21', Beam: 7'02", Unknown Draft, Engine: 2012 Yamaha Gasoline Outboard, V6, Raw Water Cooled, Model: 200AET, 200 HP, S/N: 1051174, Engine fitted with Electric Start, Alternator, Power Tilt/Trim, Sea Star Single Cylinder Hydraulic Steering & 3 Blade Propeller, Equipment: Ritchie Powerdamp Plus Magnetic Compass, Yamaha Instrumentation, Yamaha 704 Engine Control HIN: PPJ6415–686 | Alegria, Alexandra | $ 4,500.00 |
| 4 | 1989 Maxum Cuddy Cabin Vessel: Length: 19'7", White/Blue, Length: 19', HIN: USHB21MHG889 | Ambort, Joanne | $ 200.00 |
| 5 | 1990 26' Mako Open Fisherman, Center Console Vessel, Beam: 8'6", Draft: 20", Equipment: (1) Yamaha 704 Single Lever Controls, (1) Ritchie 5" Compass, (1) DC Breakers Control Panel, (2) Engines Instrumentation, (1) Hummingbird VHF Radio, (1) Hummingbird 400TX Depth Sounder, (2) Bazooka Type Stereo Speakers, (4) Stereo Speakers, (2) Outriggers Bases (T Top Mount)  Engines: 2001 Twin 225 HP Yamaha Outboards, Model: TXRA, Four Strokes, S/N Port: 000369, S/N Starboard: 000810, Three Blades Propellers | Power Sports Warehouse Inc. | $ 14,700.00 |
| 6 | Spider Open Fisherman Center Console: Length: 22'6, Beam: 8'2", Draft: 20", Equipment:  Tachometers, Volt Gauges, Suzuki Single Lever Control, Hydraulic Pump & SS Steering Wheel, Bilge Pump Switch, 3" Compass, Engines: Twin 2013 Transom Mounted Gasoline Yamaha Outboard 90 HP, Model: 09003F Four Stroke, Starboard S/N: 312324, Alloy Propellers, HIN: LUQ00023K710 | Leguillou, Luis | $ 21,800.00 |
| 7 | 1997 Avanti Center Console Openfisherman: M/V: Goat, Length: 25', Beam: 8'6", Draft: 20", Engines: Twin Yamaha Outboards, Mode: 200FETO, 200 hp, 135 gallon Fuel Tank, HIN: ERQ25114F697  Avanti Console: Yamaha 704 Lever Controls, Ritchie 4" Compass, DC Breakers, Yamaha Gauges, Garmin 160 Fishfinder | Bresciani, Martin | $ 13,600.00 |

| 8 | Yamaha 40 HP Outboard Engine, S/N: E40XMHL1168969 | Power Sports Warehouse Inc. | $ | 1,600.00 |
|---|---|---|---|---|
| 9 | Yamaha 30 HP Outboard Engine, S/N: 30GMHL316771 | Power Sports Warehouse Inc. | $ | 500.00 |
| 10 | 2005 Skiff 24 Open Fisherman Center Console: Length: 24', Beam: 6'6", Draft: 20",Teleflex Single Lever Control, HIN: PUPUY00085L505<br>Outboard Engine: 2007 Transom Mounted ,Yamaha,85 HP, Model: 85AET Enduro, Port Side S/N: 1016373, 3 Blade Alloy Propeller | Marrero, Juan | $ | 5,600.00 |
| 11 | 1995 Wellcraft: Length: 33', HIN: WELFLA25L495 | Negron, Jose | $ | 10,100.00 |
| 12 | 2010 Tique RZ2 Boat: Length: 22', HIN: T1X0636C1910, w/Trailer, VIN: 1U4RR2826AT079974 | Smith Auto Sales & Leasing | $ | 41,100.00 |
| 13 | 2009 33' Anacapri Open Fisherman Center Console Vessel, HIN: IYQ33005G809<br>2008 Boat Trailer, VIN: 1A9BB34328F714198 | Belkiz LLC | $ | 40,000.00 |
| 14 | 2005 Cobalt 263 Cuddy Cabin: Length: 26', HIN: FGE63049C505 | Colarchik, David | $ | 26,900.00 |
| 15 | 30' Eduardo☐ffshore Skiff Open Fisherman, Center Console, Beam: 7'10", Draft: 28", Equipment: (1) Yamaha 704 Dual Lever Control, (1) Ritchie 4" Compass, (1) Steering Wheel Over a Seastar hydraulic Pump, (2) DC Control Switches, HIN: Unknown<br>Twin Late Model Yamaha 115 HP Enduro O/B Engine, Starboard Model: Electric Starter, S/N: Removed From Engine, Port Side Model: Manual Start, S/N: Removed From Engine, Alloy (3) Blades Propellers S/N: Unknown | Power Sports Warehouse Inc. | $ | 7,200.00 |

| 16 | 1967 249' Cargo Sea Freighter: M/V: "Gulf Trader" Length: 249', LOA: 262', Beam: 36'4", Draft 16'8", Builder: D.W. Kremer Sohn Shiffswerft, Germany, Hull # 1132, Welded Steel Construction, IMO: 6718142, 1197 gross tons, 600 net tons, 1712 MT Deadweight, Engine: Deutz Diesel, 8 Cylinder, Model: RBVBM-545, S/N: 4573241, 1750 BHP, Equipment: Furuno FR-151OD Marine Radar, Observator Magnetic Compass, STN Atlas Debeg 3618 MF/HF DCS Controller, STN Atlas Debeg 2100 Watch Receiver, STN Atlas Debeg 3100 MF/HF Radiotelep[hone, STN Atlas Debeb 6348 VHF Radiotelephone, STN Atlas Debeg 3220 PE Message processor(2), STN Atlas Debeg 3220 8 Inmarsat  C transeiver(2), Debeg 5900 radar Transponder, . Deutz 6 cylinder port/emergency Diesel Generator, OAF 6 Cylinder Diesel Generators, 137.5 KVA(2), DoubleDrum and Gypsy Head Horizontal Hydraulic Anchor Windlass, Rigid Hull Inflatable Rescue Boat with a Johnson 15 HP Outboard Engine | Allmighty Express Shipping Inc | $  336,100.00 |

which occurred more than five years before the date of the information alleging such prior conviction.

(Pub. L. 91–513, title II, §411, Oct. 27, 1970, 84 Stat. 1269.)

### Statutory Notes and Related Subsidiaries

#### Effective Date

Section effective on first day of seventh calendar month that begins after Oct. 26, 1970, see section 704 of Pub. L. 91–513, set out as a note under section 801 of this title.

### § 852. Application of treaties and other international agreements

Nothing in the Single Convention on Narcotic Drugs, the Convention on Psychotropic Substances, or other treaties or international agreements shall be construed to limit the provision of treatment, education, or rehabilitation as alternatives to conviction or criminal penalty for offenses involving any drug or other substance subject to control under any such treaty or agreement.

(Pub. L. 91–513, title II, §412, as added Pub. L. 95–633, title I, §107(a), Nov. 10, 1978, 92 Stat. 3773.)

### Statutory Notes and Related Subsidiaries

#### Effective Date

Section effective on date the Convention on Psychotropic Substances enters into force in the United States [July 15, 1980], see section 112 of Pub. L. 95–633, set out as a note under section 801a of this title.

### § 853. Criminal forfeitures

#### (a) Property subject to criminal forfeiture

Any person convicted of a violation of this subchapter or subchapter II punishable by imprisonment for more than one year shall forfeit to the United States, irrespective of any provision of State law—

(1) any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of such violation;

(2) any of the person's property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation; and

(3) in the case of a person convicted of engaging in a continuing criminal enterprise in violation of section 848 of this title, the person shall forfeit, in addition to any property described in paragraph (1) or (2), any of his interest in, claims against, and property or contractual rights affording a source of control over, the continuing criminal enterprise.

The court, in imposing sentence on such person, shall order, in addition to any other sentence imposed pursuant to this subchapter or subchapter II, that the person forfeit to the United States all property described in this subsection. In lieu of a fine otherwise authorized by this part, a defendant who derives profits or other proceeds from an offense may be fined not more than twice the gross profits or other proceeds.

#### (b) Meaning of term "property"

Property subject to criminal forfeiture under this section includes—

(1) real property, including things growing on, affixed to, and found in land; and

(2) tangible and intangible personal property, including rights, privileges, interests, claims, and securities.

#### (c) Third party transfers

All right, title, and interest in property described in subsection (a) vests in the United States upon the commission of the act giving rise to forfeiture under this section. Any such property that is subsequently transferred to a person other than the defendant may be the subject of a special verdict of forfeiture and thereafter shall be ordered forfeited to the United States, unless the transferee establishes in a hearing pursuant to subsection (n) that he is a bona fide purchaser for value of such property who at the time of purchase was reasonably without cause to believe that the property was subject to forfeiture under this section.

#### (d) Rebuttable presumption

There is a rebuttable presumption at trial that any property of a person convicted of a felony under this subchapter or subchapter II is subject to forfeiture under this section if the United States establishes by a preponderance of the evidence that—

(1) such property was acquired by such person during the period of the violation of this subchapter or subchapter II or within a reasonable time after such period; and

(2) there was no likely source for such property other than the violation of this subchapter or subchapter II.

#### (e) Protective orders

(1) Upon application of the United States, the court may enter a restraining order or injunction, require the execution of a satisfactory performance bond, or take any other action to preserve the availability of property described in subsection (a) for forfeiture under this section—

(A) upon the filing of an indictment or information charging a violation of this subchapter or subchapter II for which criminal forfeiture may be ordered under this section and alleging that the property with respect to which the order is sought would, in the event of conviction, be subject to forfeiture under this section; or

(B) prior to the filing of such an indictment or information, if, after notice to persons appearing to have an interest in the property and opportunity for a hearing, the court determines that—

(i) there is a substantial probability that the United States will prevail on the issue of forfeiture and that failure to enter the order will result in the property being destroyed, removed from the jurisdiction of the court, or otherwise made unavailable for forfeiture; and

(ii) the need to preserve the availability of the property through the entry of the requested order outweighs the hardship on any party against whom the order is to be entered:

*Provided, however,* That an order entered pursuant to subparagraph (B) shall be effective for not more than ninety days, unless extended by the

court for good cause shown or unless an indictment or information described in subparagraph (A) has been filed.

(2) A temporary restraining order under this subsection may be entered upon application of the United States without notice or opportunity for a hearing when an information or indictment has not yet been filed with respect to the property, if the United States demonstrates that there is probable cause to believe that the property with respect to which the order is sought would, in the event of conviction, be subject to forfeiture under this section and that provision of notice will jeopardize the availability of the property for forfeiture. Such a temporary order shall expire not more than fourteen days after the date on which it is entered, unless extended for good cause shown or unless the party against whom it is entered consents to an extension for a longer period. A hearing requested concerning an order entered under this paragraph shall be held at the earliest possible time and prior to the expiration of the temporary order.

(3) The court may receive and consider, at a hearing held pursuant to this subsection, evidence and information that would be inadmissible under the Federal Rules of Evidence.

(4) ORDER TO REPATRIATE AND DEPOSIT.—

(A) IN GENERAL.—Pursuant to its authority to enter a pretrial restraining order under this section, the court may order a defendant to repatriate any property that may be seized and forfeited, and to deposit that property pending trial in the registry of the court, or with the United States Marshals Service or the Secretary of the Treasury, in an interest-bearing account, if appropriate.

(B) FAILURE TO COMPLY.—Failure to comply with an order under this subsection, or an order to repatriate property under subsection (p), shall be punishable as a civil or criminal contempt of court, and may also result in an enhancement of the sentence of the defendant under the obstruction of justice provision of the Federal Sentencing Guidelines.

**(f) Warrant of seizure**

The Government may request the issuance of a warrant authorizing the seizure of property subject to forfeiture under this section in the same manner as provided for a search warrant. If the court determines that there is probable cause to believe that the property to be seized would, in the event of conviction, be subject to forfeiture and that an order under subsection (e) may not be sufficient to assure the availability of the property for forfeiture, the court shall issue a warrant authorizing the seizure of such property.

**(g) Execution**

Upon entry of an order of forfeiture under this section, the court shall authorize the Attorney General to seize all property ordered forfeited upon such terms and conditions as the court shall deem proper. Following entry of an order declaring the property forfeited, the court may, upon application of the United States, enter such appropriate restraining orders or injunctions, require the execution of satisfactory performance bonds, appoint receivers, conservators, appraisers, accountants, or trustees, or take any

other action to protect the interest of the United States in the property ordered forfeited. Any income accruing to or derived from property ordered forfeited under this section may be used to offset ordinary and necessary expenses to the property which are required by law, or which are necessary to protect the interests of the United States or third parties.

**(h) Disposition of property**

Following the seizure of property ordered forfeited under this section, the Attorney General shall direct the disposition of the property by sale or any other commercially feasible means, making due provision for the rights of any innocent persons. Any property right or interest not exercisable by, or transferable for value to, the United States shall expire and shall not revert to the defendant, nor shall the defendant or any person acting in concert with him or on his behalf be eligible to purchase forfeited property at any sale held by the United States. Upon application of a person, other than the defendant or a person acting in concert with him or on his behalf, the court may restrain or stay the sale or disposition of the property pending the conclusion of any appeal of the criminal case giving rise to the forfeiture, if the applicant demonstrates that proceeding with the sale or disposition of the property will result in irreparable injury, harm, or loss to him.

**(i) Authority of the Attorney General**

With respect to property ordered forfeited under this section, the Attorney General is authorized to—

(1) grant petitions for mitigation or remission of forfeiture, restore forfeited property to victims of a violation of this subchapter, or take any other action to protect the rights of innocent persons which is in the interest of justice and which is not inconsistent with the provisions of this section;

(2) compromise claims arising under this section;

(3) award compensation to persons providing information resulting in a forfeiture under this section;

(4) direct the disposition by the United States, in accordance with the provisions of section 881(e) of this title, of all property ordered forfeited under this section by public sale or any other commercially feasible means, making due provision for the rights of innocent persons; and

(5) take appropriate measures necessary to safeguard and maintain property ordered forfeited under this section pending its disposition.

**(j) Applicability of civil forfeiture provisions**

Except to the extent that they are inconsistent with the provisions of this section, the provisions of section 881(d) of this title shall apply to a criminal forfeiture under this section.

**(k) Bar on intervention**

Except as provided in subsection (n), no party claiming an interest in property subject to forfeiture under this section may—

(1) intervene in a trial or appeal of a criminal case involving the forfeiture of such property under this section; or

(2) commence an action at law or equity against the United States concerning the validity of his alleged interest in the property subsequent to the filing of an indictment or information alleging that the property is subject to forfeiture under this section.

**(l) Jurisdiction to enter orders**

The district courts of the United States shall have jurisdiction to enter orders as provided in this section without regard to the location of any property which may be subject to forfeiture under this section or which has been ordered forfeited under this section.

**(m) Depositions**

In order to facilitate the identification and location of property declared forfeited and to facilitate the disposition of petitions for remission or mitigation of forfeiture, after the entry of an order declaring property forfeited to the United States, the court may, upon application of the United States, order that the testimony of any witness relating to the property forfeited be taken by deposition and that any designated book, paper, document, record, recording, or other material not privileged be produced at the same time and place, in the same manner as provided for the taking of depositions under Rule 15 of the Federal Rules of Criminal Procedure.

**(n) Third party interests**

(1) Following the entry of an order of forfeiture under this section, the United States shall publish notice of the order and of its intent to dispose of the property in such manner as the Attorney General may direct. The Government may also, to the extent practicable, provide direct written notice to any person known to have alleged an interest in the property that is the subject of the order of forfeiture as a substitute for published notice as to those persons so notified.

(2) Any person, other than the defendant, asserting a legal interest in property which has been ordered forfeited to the United States pursuant to this section may, within thirty days of the final publication of notice or his receipt of notice under paragraph (1), whichever is earlier, petition the court for a hearing to adjudicate the validity of his alleged interest in the property. The hearing shall be held before the court alone, without a jury.

(3) The petition shall be signed by the petitioner under penalty of perjury and shall set forth the nature and extent of the petitioner's right, title, or interest in the property, the time and circumstances of the petitioner's acquisition of the right, title, or interest in the property, any additional facts supporting the petitioner's claim, and the relief sought.

(4) The hearing on the petition shall, to the extent practicable and consistent with the interests of justice, be held within thirty days of the filing of the petition. The court may consolidate the hearing on the petition with a hearing on any other petition filed by a person other than the defendant under this subsection.

(5) At the hearing, the petitioner may testify and present evidence and witnesses on his own behalf, and cross-examine witnesses who appear at the hearing. The United States may present evidence and witnesses in rebuttal and in defense of its claim to the property and cross-examine witnesses who appear at the hearing. In addition to testimony and evidence presented at the hearing, the court shall consider the relevant portions of the record of the criminal case which resulted in the order of forfeiture.

(6) If, after the hearing, the court determines that the petitioner has established by a preponderance of the evidence that—

(A) the petitioner has a legal right, title, or interest in the property, and such right, title, or interest renders the order of forfeiture invalid in whole or in part because the right, title, or interest was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property under this section; or

(B) the petitioner is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture under this section;

the court shall amend the order of forfeiture in accordance with its determination.

(7) Following the court's disposition of all petitions filed under this subsection, or if no such petitions are filed following the expiration of the period provided in paragraph (2) for the filing of such petitions, the United States shall have clear title to property that is the subject of the order of forfeiture and may warrant good title to any subsequent purchaser or transferee.

**(o) Construction**

The provisions of this section shall be liberally construed to effectuate its remedial purposes.

**(p) Forfeiture of substitute property**

**(1) In general**

Paragraph (2) of this subsection shall apply, if any property described in subsection (a), as a result of any act or omission of the defendant—

(A) cannot be located upon the exercise of due diligence;

(B) has been transferred or sold to, or deposited with, a third party;

(C) has been placed beyond the jurisdiction of the court;

(D) has been substantially diminished in value; or

(E) has been commingled with other property which cannot be divided without difficulty.

**(2) Substitute property**

In any case described in any of subparagraphs (A) through (E) of paragraph (1), the court shall order the forfeiture of any other property of the defendant, up to the value of any property described in subparagraphs (A) through (E) of paragraph (1), as applicable.

**(3) Return of property to jurisdiction**

In the case of property described in paragraph (1)(C), the court may, in addition to any other action authorized by this subsection,

order the defendant to return the property to the jurisdiction of the court so that the property may be seized and forfeited.

**(q) Restitution for cleanup of clandestine laboratory sites**

The court, when sentencing a defendant convicted of an offense under this subchapter or subchapter II involving the manufacture, the possession, or the possession with intent to distribute, of amphetamine or methamphetamine, shall—

(1) order restitution as provided in sections 3612 and 3664 of title 18;

(2) order the defendant to reimburse the United States, the State or local government concerned, or both the United States and the State or local government concerned for the costs incurred by the United States or the State or local government concerned, as the case may be, for the cleanup associated with the manufacture of amphetamine or methamphetamine by the defendant, or on premises or in property that the defendant owns, resides, or does business in; and

(3) order restitution to any person injured as a result of the offense as provided in section 3663A of title 18.

(Pub. L. 91–513, title II, § 413, as added and amended Pub. L. 98–473, title II, §§ 303, 2301(d)–(f), Oct. 12, 1984, 98 Stat. 2044, 2192, 2193; Pub. L. 99–570, title I, §§ 1153(b), 1864, Oct. 27, 1986, 100 Stat. 3207–13, 3207–54; Pub. L. 104–237, title II, § 207, Oct. 3, 1996, 110 Stat. 3104; Pub. L. 106–310, div. B, title XXXVI, § 3613(a), Oct. 17, 2000, 114 Stat. 1229; Pub. L. 107–56, title III, § 319(d), Oct. 26, 2001, 115 Stat. 314; Pub. L. 109–177, title VII, § 743(a), Mar. 9, 2006, 120 Stat. 272; Pub. L. 111–16, § 5, May 7, 2009, 123 Stat. 1608.)

## Editorial Notes

### References in Text

The Federal Rules of Evidence, referred to in subsec. (e)(3), are set out in the Appendix to Title 28, Judiciary and Judicial Procedure.

The Federal Rules of Criminal Procedure, referred to in subsec. (m), are set out in the Appendix to Title 18, Crimes and Criminal Procedure.

### Amendments

2009—Subsec. (e)(2). Pub. L. 111–16 substituted "fourteen days" for "ten days".

2006—Subsec. (q). Pub. L. 109–177, § 743(a)(1), inserted ", the possession, or the possession with intent to distribute," after "manufacture" in introductory provisions.

Subsec. (q)(2). Pub. L. 109–177, § 743(a)(2), inserted ", or on premises or in property that the defendant owns, resides, or does business in" after "by the defendant".

2001—Subsec. (e)(4). Pub. L. 107–56, § 319(d)(2), added par. (4).

Subsec. (p). Pub. L. 107–56, § 319(d)(1), inserted heading and amended text of subsec. (p) generally. Prior to amendment, text read as follows: "If any of the property described in subsection (a) of this section, as a result of any act or omission of the defendant—

"(1) cannot be located upon the exercise of due diligence;

"(2) has been transferred or sold to, or deposited with, a third party;

"(3) has been placed beyond the jurisdiction of the court;

"(4) has been substantially diminished in value; or

"(5) has been commingled with other property which cannot be divided without difficulty;

the court shall order the forfeiture of any other property of the defendant up to the value of any property described in paragraphs (1) through (5)."

2000—Subsec. (q). Pub. L. 106–310, § 3613(a)(1), (2), in introductory provisions, inserted "amphetamine or" before "methamphetamine" and substituted "shall" for "may".

Subsec. (q)(2). Pub. L. 106–310, § 3613(a)(2), (3), inserted ", the State or local government concerned, or both the United States and the State or local government concerned" after "to reimburse the United States", "or the State or local government concerned, as the case may be," after "costs incurred by the United States", and "amphetamine or" before "methamphetamine".

Subsec. (q)(3). Pub. L. 106–310, § 3613(a)(4), substituted "section 3663A of title 18" for "section 3663 of title 18".

1996—Subsec. (q). Pub. L. 104–237 added subsec. (q).

1986—Subsec. (c). Pub. L. 99–570, § 1864(1), substituted "subsection (n)" for "subsection (o)".

Subsec. (f). Pub. L. 99–570, § 1864(2), substituted "subsection (e)" for "subsection (f)".

Subsec. (l)(1). Pub. L. 99–570, § 1864(3), substituted "this subchapter" for "this chapter".

Subsec. (k). Pub. L. 99–570, § 1864(1), (4), which directed the substitution of "subsection (n)" for "subsection (o)" in "the second subsection (h)", and directed the redesignation of "the second subsection (h)" as subsection (k), were executed to this subsection because the "second subsection (h)" had been editorially redesignated subsec. (k) to reflect the probable intent of Congress. See 1984 Amendment note below.

Subsec. (p). Pub. L. 99–570, § 1153(b), which directed that "section 413 of title II of the Comprehensive Drug Abuse Prevention and Control Act of 1975" be amended "by redesignating subsection '(p)' as subsection '(q)'" and adding subsec. (p) was executed to this section, which is section 413 of the Comprehensive Drug Abuse Prevention and Control Act of 1970, as the probable intent of Congress, by adding a subsec. (p) in view of the prior redesignation of subsec. (p) as (o) by Pub. L. 98–473, § 2301(e)(2). See 1984 Amendment note below.

1984—Subsec. (a). Pub. L. 98–473, § 2301(d), inserted "In lieu of a fine otherwise authorized by this part, a defendant who derives profits or other proceeds from an offense may be fined not more than twice the gross profits or other proceeds."

Subsec. (d). Pub. L. 98–473, § 2301(e), struck out subsec. (d) which related to forfeiture of property other than that described in subsec. (a) and the conditions therefor, and redesignated former subsec. (e) as (d).

Subsecs. (e) to (p). Pub. L. 98–473, § 2301(e)(2), which directed that this section be amended by redesignating subsecs. (e), (f), (g), (h), (i), (j), (m), (n), (o), and (p) as subsecs. (d), (e), (f), (g), (h), (i), (j), (h), (l), (m), (n), and (o), respectively, was executed by redesignating subsecs. (e) to (p) as (d) to (o), respectively, to give effect to the probable intent of Congress.

Subsec. (n)(1). Pub. L. 98–473, § 2301(f), struck out "for at least seven successive court days" after "to dispose of the property".

## Statutory Notes and Related Subsidiaries

### Effective Date of 2009 Amendment

Amendment by Pub. L. 111–16 effective Dec. 1, 2009, see section 7 of Pub. L. 111–16, set out as a note under section 109 of Title 11, Bankruptcy.

### Savings Clause

Pub. L. 109–177, title VII, § 743(b), Mar. 9, 2006, 120 Stat. 273, provided that: "Nothing in this section [amending this section] shall be interpreted or construed to amend, alter, or otherwise affect the obligations, liabilities and other responsibilities of any person under any Federal or State environmental laws."

§ 853a                    TITLE 21—FOOD AND DRUGS                    Page 864

## § 853a. Transferred

### Editorial Notes
#### CODIFICATION

Section, Pub. L. 100–690, title V, § 5301, Nov. 18, 1988, 102 Stat. 4310, which related to denial of Federal benefits to drug traffickers and possessors, was renumbered section 421 of the Controlled Substances Act by Pub. L. 101–647, title X, § 1002(d)(1), Nov. 29, 1990, 104 Stat. 4827, and is classified to section 862 of this title.

## § 854. Investment of illicit drug profits

### (a) Prohibition

It shall be unlawful for any person who has received any income derived, directly or indirectly, from a violation of this subchapter or subchapter II punishable by imprisonment for more than one year in which such person has participated as a principal within the meaning of section 2 of title 18, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect interstate or foreign commerce. A purchase of securities on the open market for purposes of investment, and without the intention of controlling or participating in the control of the issuer, or of assisting another to do so, shall not be unlawful under this section if the securities of the issuer held by the purchaser, the members of his immediate family, and his or their accomplices in any violation of this subchapter or subchapter II after such purchase do not amount in the aggregate to 1 per centum of the outstanding securities of any one class, and do not confer, either in law or in fact, the power to elect one or more directors of the issuer.

### (b) Penalty

Whoever violates this section shall be fined not more than $50,000 or imprisoned not more than ten years, or both.

### (c) "Enterprise" defined

As used in this section, the term "enterprise" includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity.

### (d) Construction

The provisions of this section shall be liberally construed to effectuate its remedial purposes.

(Pub. L. 91–513, title II, § 414, as added Pub. L. 98–473, title II, § 303, Oct. 12, 1984, 98 Stat. 2049.)

## § 855. Alternative fine

In lieu of a fine otherwise authorized by this part, a defendant who derives profits or other proceeds from an offense may be fined not more than twice the gross profits or other proceeds.

(Pub. L. 91–513, title II, § 415, as added Pub. L. 98–473, title II, § 2302, Oct. 12, 1984, 98 Stat. 2193.)

## § 856. Maintaining drug-involved premises

### (a) Unlawful acts

Except as authorized by this subchapter, it shall be unlawful to—

(1) knowingly open, lease, rent, use, or maintain any place, whether permanently or temporarily, for the purpose of manufacturing, distributing, or using any controlled substance;

(2) manage or control any place, whether permanently or temporarily, either as an owner, lessee, agent, employee, occupant, or mortgagee, and knowingly and intentionally rent, lease, profit from, or make available for use, with or without compensation, the place for the purpose of unlawfully manufacturing, storing, distributing, or using a controlled substance.

### (b) Criminal penalties

Any person who violates subsection (a) of this section shall be sentenced to a term of imprisonment of not more than 20 years or a fine of not more than $500,000, or both, or a fine of $2,000,000 for a person other than an individual.

### (c) Violation as offense against property

A violation of subsection (a) shall be considered an offense against property for purposes of section 3663A(c)(1)(A)(ii) of title 18.

### (d) Civil penalties

(1) Any person who violates subsection (a) shall be subject to a civil penalty of not more than the greater of—

(A) $250,000; or

(B) 2 times the gross receipts, either known or estimated, that were derived from each violation that is attributable to the person.

(2) If a civil penalty is calculated under paragraph (1)(B), and there is more than 1 defendant, the court may apportion the penalty between multiple violators, but each violator shall be jointly and severally liable for the civil penalty under this subsection.

### (e) Declaratory and injunctive remedies

Any person who violates subsection (a) shall be subject to declaratory and injunctive remedies as set forth in section 843(f) of this title.

(Pub. L. 91–513, title II, § 416, as added Pub. L. 99–570, title I, § 1841(a), Oct. 27, 1986, 100 Stat. 3207–52; amended Pub. L. 106–310, div. B, title XXXVI, § 3613(e), Oct. 17, 2000, 114 Stat. 1230; Pub. L. 108–21, title VI, § 608(b)(1), (2), (c), Apr. 30, 2003, 117 Stat. 691.)

### Editorial Notes
#### AMENDMENTS

2003—Pub. L. 108–21, § 608(b)(2), substituted "Maintaining drug-involved premises" for "Establishment of manufacturing operations" in section catchline.

Subsec. (a)(1). Pub. L. 108–21, § 608(b)(1)(A), substituted "open, lease, rent, use, or maintain any place, whether permanently or temporarily," for "open or maintain any place".

Subsec. (a)(2). Pub. L. 108–21, § 608(b)(1)(B), added par. (2) and struck out former par. (2) which read as follows: "manage or control any building, room, or enclosure, either as an owner, lessee, agent, employee, or mortgagee, and knowingly and intentionally rent, lease, or make available for use, with or without compensation, the building, room, or enclosure for the purpose of unlawfully manufacturing, storing, distributing, or using a controlled substance."

Subsecs. (d), (e). Pub. L. 108–21, § 608(c), added subsecs. (d) and (e).